**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| JINGLING WU, et al., | Case No. 2:19-cv-00229-JCM-BNW |
| Plaintiffs, | |
| v. | **ORDER** |
| ANDREW S. FONFA, et al., | |
| Defendants. | |

Presently before the court is defendants William Weidner, Bofu, LLC, and Weidner Management, LLC's Demand for Security of Costs (ECF No. 20), filed on April 1, 2019. Plaintiffs filed a limited opposition (ECF No. 27) on April 5, 2019. Defendants Weidner, Bofu, and Weidner Management filed a reply (ECF No. 35) on April 12, 2019. Defendant Jacoby filed a joinder (ECF No. 36) to the reply on the same date.

Also before the court is defendants Andrew Fonfa, Sahara Investments, LLC, Las Vegas Economic Impact Regional Center, LLC, and Eastern Investments, LLC's Demand for Security of Costs (ECF No. 21), filed on April 2, 2019. Plaintiffs filed a limited opposition (ECF No. 28) on April 5, 2019. Defendants filed a reply (ECF No. 32) on April 10, 2019.

Also before the court is defendant David Jacoby's Demand for Security of Costs (ECF No. 32), filed on April 10, 2019. Plaintiffs filed a limited opposition (ECF No. 33) on April 11, 2019. This case was reassigned to the undersigned magistrate judge on May 3, 2019.

**I.     Background**

This case involves a commercial dispute between investors and various individuals and entities involved in the development and construction of the Lucky Dragon Hotel & Casino, which was the first casino resort in Las Vegas, Nevada, catering exclusively to an Asian cultural and gaming experience. (*See* Compl. (ECF No. 1).) The 40 plaintiffs are Chinese nationals who allege they each invested $500,000, plus a $50,000 processing fee, as part of a United States

government approved immigrant investor program that would provide both a U.S. Green Card and a return of their investment. (*Id.* at 2, 5.) Defendants allegedly are various individuals and entities involved in the development, construction, and operation of the Lucky Dragon. (*Id.* at 2-4.) Plaintiffs allege the individual defendants reside in Nevada and the entities are organized under the laws of the State of Nevada. (*Id.*)

According to plaintiffs, construction of the project began in April 2015 and the Lucky Dragon opened in November 2016, but the project's budget was significantly higher than the initial budget and the project never turned a profit, resulting in Lucky Dragon, LP seeking Chapter 11 bankruptcy protection. (*Id.* at 14.) Plaintiffs allege the project's bankruptcy and sale are "material changes" in the project's business plan that was submitted to USCIS, thereby making them unable to show they have sustained their investment and created necessary jobs and preventing them from obtaining their Green Cards. (*Id.*) Plaintiffs sued defendants in this court on the basis of diversity jurisdiction, alleging claims for misrepresentation/false promise (claim one), breach of fiduciary duty/constructive fraud (claim two), breach of contract (claim three), breach of good faith and fair dealing under contract and tort theories (claim four), negligence (claim five), unjust enrichment (claim six), conversion (claim seven), accounting (claim eight), and declaratory relief (claim nine). (*Id.* at 14-25.) Defendants now request cost bonds totaling $160,000. While plaintiffs do not oppose posting security for costs, they argue the bond should be limited to $4,000.

**II. Analysis**

Across three motions, defendants request cost bonds totaling $160,000 (the math: 40 plaintiffs x 8 defendants x $500) under Nevada's cost bond statute, Nevada Revised Statutes § 18.130. Plaintiffs oppose the motion, arguing each of the 40 plaintiffs should not be required to separately post security for costs. Plaintiffs argue defendants' demand is an abuse of § 18.130's purpose and is a tactic intended to deplete plaintiffs' remaining resources. Relying on *Fourchier v. McNeil Construction Company*, 227 P.2d 429 (Nev. 1951), Plaintiffs contend they do not allege separate and distinct claims that would justify requiring each plaintiff to individually secure costs as to each defendant. Plaintiffs propose that the court limit the cost bond to a total of $4,000 (the

1  math: 8 defendants x $500), meaning that the plaintiffs collectively would post $500 per defendant. Plaintiffs also argue that under the statute, the court may require additional security later in this case if the defendants demonstrate the original bond is insufficient.

Defendants reply that the statute's plain language requires each of the 40 individually named plaintiffs to post a $500 bond for each of the defendants. Defendants argue the statute's purpose—protecting defendants from the dangers of litigating against non-resident defendants, including the difficulty of collecting a judgment from plaintiffs with no assets and few ties to the forum state—is prevalent in this case, in which all plaintiffs are Chinese nationals. Defendants further argue the complaint asserts claims on behalf of each plaintiff, seeks relief for each plaintiff, and if the case proceeds to trial, each of the 40 plaintiffs will have to prove his or her claims, including fraud claims which must based on particular facts specific to each plaintiff and will be subject to separate proof, separate damages, and separate defenses. Defendants contend that per plaintiffs' allegations, separate contracts are at issue and defendants likely will be required to take separate depositions of the separate plaintiffs. Defendants also contend that each of the forty plaintiffs could have filed separate lawsuits and the fact they determined to prosecute their claims in a single action, whether it was for convenience or strategic reasons, should not deprive defendants of the Nevada statute's safeguards for in-state defendants.

Regarding *Fourchier*, defendants argue the case is distinguishable on the facts because it involved 39 non-resident plaintiffs and one Nevada plaintiff and examined whether security needed to be posted when one of the plaintiffs was a Nevada resident and the parties joined claims that could have been brought as separate lawsuits. Finally, defendants argue that in more recent opinions, the Nevada Supreme Court has cited *Fourchier* as standing for the proposition that a bond must be posted by each plaintiff.

Under Nevada law, an in-state defendant may demand a cost bond from an out-of-state plaintiff at the commencement of a case to secure future costs the defendant may incur if the case proceeds. Nev. Rev. Stat. § 18.130; *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994). Specifically, § 18.130(1) provides, in pertinent part:

> When a plaintiff in an action resides out of the State, ... security for the costs and charges which may be awarded against such plaintiff may be required by the defendant, by the filing and service on plaintiff of a written demand therefor within the time limited for answering the complaint.

When a defendant demands a cost bond, "all proceedings in the action shall be stayed" until plaintiff files "an undertaking, executed by two or more persons, to be filed with the clerk, to the effect that they will pay such costs and charges as may be awarded against the plaintiff by judgment, or in the progress of the action" or "in lieu of such undertaking the plaintiff may deposit $500, lawful money, with the clerk of the court." *Id.* If the cost bond is not posted within 30 days from the date of demand, the court in its discretion may dismiss the case. *Id.* at § 18.130(4); *Brion v. Union Plaza Corp.*, 763 P.2d 64, 65-66 (Nev. 1998) (per curiam). Section 18.130's purpose is to "allow[] defendants to protect themselves from the dangers of litigating against nonresident plaintiffs." *Biscay v. MGM Resorts Int'l*, 352 P.3d 1148, 1149 (Nev. 2015).

Although security of costs is not required under the Federal Rules of Civil Procedure, "federal district courts have inherent power to require plaintiffs to post security for costs." *Simulnet*, 37 F.3d at 574. "Typically federal courts, either by rule or by case-to-case determination, follow the forum state's practice with regard to security for costs, as they did prior to the federal rules; this is especially common when a non-resident party is involved." *Id.* (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2671). It is within the court's discretion whether to require security of costs. *Id.* The District of Nevada enforces the requirements of Nevada's cost bond statute in diversity actions. *Wells Fargo Bank, N.A. v. SFR Investments Pool 1, LLC*, 257 F. Supp. 3d 1110, 1111 (D. Nev. 2017) (recognizing the application of the cost bond statute in diversity cases but declining to require a cost bond in a case invoking federal-question jurisdiction); *Hamar v. Hyatt Corp.*, 98 F.R.D. 305, 305 (D. Nev. 1983) (stating that "[i]t has been the policy of the United States District Court for the District of Nevada to enforce the requirements of NRS § 18.130 in diversity actions.").

In calculating the amount of the cost bond, the Nevada Supreme Court has held "that a bond must be posted by each plaintiff when a demand is made." *Brion*, 763 P.2d at 65 (citing *Fourchier*, 227 P.2d 429 (Nev. 1951)). Before *Brion* was published, the District of Nevada also

interpreted the statute "to require security in the amount of $500 per defendant from each plaintiff." *Truck Ins. Exch. v. Tetzlaff*, 683 F. Supp. 223, 227-28 (D. Nev. 1988) (requiring two non-resident plaintiffs who sued two Nevada defendants to provide $500 security for each defendant, for a total of $2,000).

Here, based on the plain language of § 18.130, as well as the Nevada Supreme Court's interpretation of the statute in *Brion*, the court in its discretion finds that each of the 40 plaintiffs must post a cost bond of $500 for each of the defendants, totaling $160,000. While the court is cognizant of the practical burden § 18.130 places on plaintiffs and of the significant amount of the overall cost bond in this case, the burden on each individual plaintiff will be $4,000 (the math: $160,000 ÷ 40 plaintiffs). This is a relatively modest amount given the amount of damages at stake in this case, i.e., over $550,000 for each of the 40 plaintiffs and over $22 million in the aggregate. Further, each of the 8 defendants in this case will incur costs separately in mounting separate defenses against each of the 40 plaintiff's claims. Although the plaintiffs allege the same claims, each plaintiff's claims will be subject to separate proof, separate damages, and separate defenses, and potentially separate discovery, such as depositions of each of the 40 plaintiffs. Additionally, the court notes the funds will be safeguarded in the court's registry account pending the outcome of this litigation.

The court further finds that the present case is distinguishable from *Fourchier*, in which there were 40 plaintiffs, one of whom was a Nevada resident and 39 of whom were non-residents. 227 P.2d at 429. The primary issue before the *Fourchier* court was whether the state district court abused its discretion in dismissing the case as to the 39 non-resident plaintiffs for failure to post costs bonds when one of the plaintiffs was a Nevada resident and the non-residents believed they were not required to post a bond, or, if it was required, that one bond for all plaintiffs would suffice. *Id.* at 432-34.

In dicta, the *Fourchier* court acknowledged that some courts do not require a cost bond when a group of plaintiffs consists of both residents and non residents and they join in prosecuting a single claim; but the court held that exception did not apply because the plaintiffs joined separate and independent claims to "avoid a multiplicity of suits." *Id.* at 432-33. The

*Fourchier* court noted that each of the plaintiffs' claims were based upon a separate contract and each alleged and sought "an independent money judgment in which no other plaintiff would have any interest." *Id.* at 432. Thus, it was "self-evident that to such extent at least each separate cause of action will be subject to support by its own separate proof and against which a separate defense would be required on the part of the defendants." *Id.* at 433. The court also noted that "Defendants, in preparation for suit, might well deem it advisable to take the separate depositions of the separate plaintiffs residing in different places outside of the State of Nevada" and that "[a]ny judgment rendered might award relief to some plaintiffs while denying it to others." *Id.* In reversing the district court's dismissal of the case as to the non-resident plaintiffs, the *Fourchier* court ultimately instructed the district court to allow each of the non-resident plaintiffs a reasonable time to post a separate cost bond for each of the defendants. *Id.* at 435-36.

In the present case, all the 40 plaintiffs are Chinese nationals and have independent claims. Although the plaintiffs decided to prosecute the claims in a single case, it appears to the court they could have brought 40 individual lawsuits. Additionally, plaintiffs allege there are multiple contracts at issue. While the *Fourchier* court acknowledges in dictum an exception to the rule that all plaintiffs must post costs bonds as to each individual defendant, the plaintiffs in the present case are not similarly situated to the plaintiffs described in the dictum. Significantly, the *Fourchier* court ultimately required the district court to give each plaintiff the opportunity to post security with respect to each defendant, which is the very result the defendants seek in the present case. The court in its discretion therefore declines to apply an exception to the requirement that a bond must be posted by each plaintiff when a demand is made.

**III. Conclusion**

IT IS THEREFORE ORDERED that defendants William Weidner, Bofu, LLC, and Weidner Management, LLC's Demand for Security of Costs (ECF No. 20) is GRANTED.

IT IS FURTHER ORDERED that defendants Andrew Fonfa, Sahara Investments, LLC, Las Vegas Economic Impact Regional Center, LLC, and Eastern Investments, LLC's Demand for Security of Costs (ECF No. 21) is GRANTED.

IT IS FURTHER ORDERED that defendant David Jacoby's Demand for Security of Costs (ECF No. 32) is GRANTED.

IT IS FURTHER ORDERED that by December 27, 2019, in accordance with Nevada Revised Statutes § 18.130(1), each of the 40 plaintiffs in this case must file an undertaking or make a cash deposit of $500 with the clerk of court for each of the following defendants: (1) William Weidner, (2) Bofu, LLC, (3) Weidner Management, LLC, (4) David Jacoby, (5) Andrew Fonfa, (6) Sahara Investments, LLC, (7) Las Vegas Economic Impact Regional Center, LLC, and (8) Eastern Investments, LLC.

IT IS FURTHER ORDERED that under Nevada Revised Statutes § 18.130(2), this case is stayed until plaintiffs comply with this order. After plaintiffs comply with this order, any party may move to lift the stay.

DATED: November 27, 2019

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE